May it please the court, my name is Harvey Levine, I represent the petitioner. I'd like to point out, if I may, the significant items of substantial evidence which the administrative trial judge, Judge Booker, had before him, which was overlooked by the board in reversing Judge Booker. He had a memo in the testimony of Mr. Martin's supervisor, Christine Palladino, who decided that the appropriate penalty would be 10 days. He had the testimony of Martin Ingram, the deciding official, who stated that he agreed with Ms. Palladino that the penalty should be 10 days, but that he changed his mind when he was notified that Mr. Thomas, Duval Thomas, who was the regional computer expert for the branch office, indicated that he saw pornography on Mr. Martin's screen on six occasions. He then, under cross-examination, learned for the first time that Duval Thomas testified that on each occasion it arose that he viewed this pornography because Mr. Martin complained of the pornographic pop-ups. Was Mr. Thomas' testimony the only evidence of sexual exploitation? Yes, it was the only evidence. It was the only evidence. There was an illusion that one of the employees may have seen pornography on the screen. That employee never testified. What about the emails that were sent from other people? Oh, absolutely. But basically, my client testified that there were eight unauthorized emails which were sent, and there was no issue about that. The Judge Booker also had before him Mr. Budai's testimony. He's the computer expert who indicated unequivocally, and you find it in Judge Booker's determination, Your Honor, the determination that each item of so-called pornography was opened and closed in one second. When you combine that with the deciding officials coming, and he was queried about it under cross-examination, when you combine that with his admission in writing that the agency couldn't prove that Martin was opening pornography because of the quickness of the opening and closing, when you combine the fact that under cross-examination, Mr. Ingram stated unequivocally that he didn't realize that Martin was complaining, that was the fulcrum issue which brought Mr. Ingram over the top and decided, and he said so, and it's in the record, it's ensconced in the record, and it's in our brief. The indication clearly is, clearly, that without this issue, i.e., the testimony of Duval Thomas, Mr. Ingram would have agreed to a ten-day penalty, a suspension, and not a demotion. And then when you combine that with Mr. Ingram's own statements, when he came to this revelation under cross-examination, that he needs time to think about it, he needs time to think it over, and when you read the record, the record is totally unresolved in terms of what the appropriate remedy should be. So now you have a situation where the hearing, where the administrative judge finds Duval Thomas' testimony as a matter of law to be incredible. He wrote it. So this was the fulcrum push, if you will, which led Mr. Ingram to decide on the penalty of demotion. And that push came from a witness who, A, admitted that he shortchanged Mr. Ingram by not telling him the truth, by not telling him the full implications of what he saw and under what circumstances, and you have Mr. Ingram now saying, amongst everything else, that he has to think about it. What did he have to think about, Your Honor? He had to think about verifying— Having to think about it isn't good enough, and I mean you it isn't good enough for you to feel right. I mean, your argument hinges on a clear statement in the record by— Absolutely. It's an old— The fact that he said he had to think about it is not helpful to you. But the record is replete with Mr. Thomas' testimony that he only told a half-truth, that every time he saw pornography, Mr. Martin complained about that pornography. That's not speculative. That is not ambiguity. What happened? But we are not, under the law, and I'm correcting you if you think I'm wrong, we're not going to put ourselves in the position of the deciding official and what he or she might have done in light of that testimony. You are required to come forward with some clarity in the record that the deciding official would not have done this if this happened. And frankly, I'm looking at the operative quote. I mean, am I right that there's one quote here that's really the focus of your argument, the one on 8773? Sure. On a paragraph. Sure. Frankly, I'm having some trouble, you know, concluding that that's less, you know, not ambiguous. Judge, may I? You know, when we read some of the appropriate case law emanating from this court, Jackson against the Veterans Administration, saying that the board cannot substitute its discretion, its findings, for that of the administrative judge without substantial evidence. Let's say you took away that quote which you find ambiguous. Most respectfully, I don't see it as ambiguous for the simple reason that there's no ambiguity. He now is confronted, he being Mr. Ingram, he now is confronted, Your Honor, with the truth. And he says, well, I have to think about this. I have to back off. Now, but the record, the record shows unequivocally that Duval Thomas said what he said. And he said he never, I never saw him look at it in terms of just admiring it. He called me in. I put in a blocker to block the pop-ups. Now, that's not ambiguous. That is definitive. But it's not an issue either. Well, but it was made to be an issue by the board. But the question is what Mr. Ingram would have done with that information, not the veracity. I understand. I understand. But when you look at the determination of the board, the board ignored Mr. Ingram's statement that he didn't know that Duval Thomas had given only a half-truth. And that was the fulcrum issue which brought him over the top to decide on a demotion. The board ignored that. The only thing the board decided of a substantive nature in terms of substantial evidence, and this is why their determination is arbitrary and capricious, is devoid of substantial evidence. The only thing they decided was that Martin Ingram said all over the record that each charge could have been a demotion. That's what they said. But they ignored the cross-examination where he said if it was only charge one and Duval Thomas had not come to me with the information, it would have been ten days. The ten days recommended by Mr. Martin's supervisor. Now, now you have a situation where Thomas's testimony is untrue. What do we do? Do we ignore it? The board decided their substantial evidence issue on the direct examination of Ingram, not on the cross-examination. Nothing was mentioned on cross. As a matter of fact, when they wrote their determination, they indicated, as I said, that Mr. Ingram decided these had stated throughout direct, not cross, throughout direct, that any charge could be subject to demotion. And Mr. Ingram changed that testimony on cross, and it's resplendent in the record you're on. Can I just ask you a quick mechanical kind of question, just to make sure I've got this right? Three charges, two go down, one's left, right? I don't blame you. Well, yeah, I blame you, for my purpose of understanding, at least. You've got three charges. What's at issue here, what's left, is charge one, but your argument is predicated on the second specification. That's correct. So it's not predicated on one charge versus the other. It's predicated on whether, what the penalty is when you… Because, that's right. But was there no evidence other than Mr. Thomas' evidence with regard to the second specification? The only evidence was Mr. Budai, who represents the agency, came and testified. I can't state for certain that what was done, because it looks to me that it was opened and closed in one second, and it's really Judge Booker's determination. Judge Booker states unequivocally that the fact that it's opened and closed in one second gives credence to the petitioner's position that he didn't do it intentionally. This was involuntary. I'm sorry, we're going to cut that, and here's your rebuttal time. Why don't you let the government go, and you can come back. Thank you. Mr. Hibby? May it please the Court? The full Board's decision to sustain the penalty determination of demotion is supported by substantial evidence and is in accordance with the law, and it should be affirmed for the following two reasons. The first reason is that there is substantial documentary and testimonial evidence that supports the Board's finding of fact. And the second is the finding of fact that the agency would not impose a lesser penalty. And the second factor is that the full Board correctly determined that the penalty of demotion is within the tolerable bounds of reasonableness. Was Mr. Thomas' evidence or testimony the only thing to corroborate based upon which the specification 2 of charge 1 is based? No, Your Honor. There is record evidence, Mr. Boudin's testimony, that 71 images were found on the hard drive of Mr. Markin's computer. The initial decision, which is a lengthy document, goes into great detail describing on each day the image searches that Mr. Markin conducted. It has not been disputed that he did. Isn't that the first specification? Or maybe I'm confused. Well, they're tied in with one another because the first specification has to do with excessive Internet usage. The second one has to do with searching or having pornographic images on his computer. So it's an important fact that I think was not fully addressed before I stood up here. There's undisputed evidence of 71 images of pornography on the hard drive. There's also undisputed testimony that Mr. Markin spent literally hours a day on his computer. I correctly understand that the administrative judge sustained both of the specifications of charge 1, is that correct? That's correct. I also think it's important to note that if we look at the doublest factors... Let me ask you one other thing. Do you see the board here as disagreeing with the administrative judge's findings of fact? Because we have an exhaustive opinion by DOJ, a very careful, thorough opinion. Or do you see the board as having, for want of a better word, come to a different legal or discretionary decision based on the facts? I didn't really get a sense that the board disagreed so much with the facts that A.J. found as to what happened. Do you agree or disagree with that? No, I think that your Honor is correct in that the full board certainly agreed with the majority of the facts that were found. What the full board distinguished was the penalty determination in that aspect. I think that the board does a very good job of explaining what facts it was using in order to come to the conclusion that the penalty determination of demotion is what the agency still intended after two of the charges were not sustained. And I think a very important point we can make as well, the petitioner spent a great deal of time talking about his cross-examination of the decided official. That occurs in the record at Joint Appendix 742 to 747. At Joint Appendix 771, in the most unequivocal statement about sustaining the charges, the decided official states, I would sustain the penalty of demotion for any of the charges standing alone. And that has never changed. And there is substantial evidence to support that finding. No, I understand. But I think the argument against that, or at least the reason that's called into question, is because there was some pushback on what Charge 1 actually consisted of. So clearly, if one charge is left standing, yes, he said he would support it. But I think the other argument is that at least a portion of that charge, Charge 1, or at least a portion of the spec was undermined by the Thomas issue. And you agree with that, right? I would not agree with that, Your Honor. Mainly because if you take a look at that second spec, that second spec deals with pornography and with the 71 images that were found on the hard drive. But didn't it also include what Mr. Thomas was referring to? Well, let's think about what Mr. Thomas was referring to. Mr. Thomas said that he saw six, or on six occasions, saw pornographic images on the computer. He then said, well, those images were of a pop-up variety, and they were, I was brought in to repair them. What we've learned, however, is that the argument which has been made by the petitioner, that, well, all 71 of these images, they may have been pop-ups, doesn't work. Because as Mr. Budai testified, in order for a pop-up to become resident on your hard drive, you actually have to open it. If you X out the pop-up ad, or the pop-up graphic image, then it will not appear on your hard drive. And the other thing that we learned from the testimony of Mr. Budai is, you will often receive pop-ups or pornographic websites because of where you have been visiting within the internet, websites that you've been going to. So, I respectfully disagree with that argument. The testimony that Mr. Levine was discussing during his part of the argument, I guess, goes to the second specification of the first charge, is that correct? Yes. To the alleged visiting pornographic sites or having 71 pornographic images on the hard drive. Well, we think what the petitioner was stating just now goes towards sort of more impeaching the testimony or impeaching the credibility of a witness regarding what he saw. It doesn't change the fact that there are 71 images on the hard drive. I guess I should have asked the question differently. There were two charges here, I'm sorry, two specifications to charge one. Number one, the specification was excessive private use of the computer. Charge two related to the 71 pornographic images that were found, correct? Yes. What I'm trying to find out is how are those related? In other words, you could have a situation where an employee would be guilty of excessive internet use and properly sanctioned for it and it wouldn't involve anything to do with pornography. He or she could be following the stock market all day or going to ESPN or following the news or just doing personal purchases on the computer. How are these two connected? In other words, was purportedly all of the time spent on inappropriate sites or was it sites that wouldn't be criticized for visiting but they were just a lot of time? It was a mix, Your Honor. Mr. Marr did testify that he was in the market for a car and that he'd gone to Buick.com. He also testified that he likes to go to shows at Mohegan Sun and he was on the Mohegan Sun website trying to find out. So the time on the internet involved, it would be the government's position, both pornographic and non-pornographic sites. Right. But excessive use of a government resource for performing non-government work. But the point is an employee can be sanctioned for excessive use of the computer and it doesn't have to involve visiting inappropriate websites. That is correct. That is correct. I'm sorry, Your Honor. I want to be sure I'm not confused now. Spec 1 did not involve the pornographic sites, did it? It involved going to celebrity sites, you know? Celebrities? What was it, Britney? I don't know. Some names we know. But they were celebrities. Maybe that's pornographic. I don't know. I thought it was Hollywood kind of stuff. And that the second spec was the one that brought in the pornography. Well, the first spec, as we stated earlier, I think they almost have to be interwoven with one another because there's time on the internet. The original, the first specification involves the excessive use of the internet, which the record of it shows. It's not necessarily inappropriate. Not necessarily inappropriate. All right. So the second spec. The second spec runs into the... The second spec, the specification was that all pornographic images. I mean, in other words, you could go to a website to find out about an actor or an actress and it wouldn't be necessarily pornographic. That is true. The mechanics of the search, however, was putting a celebrity's name into a Google image search, whereas opposed to a general Google search, which would take you to, say, Britney Spears' home page. If you put a Google image search, you would get all the galaxy of images of Ms. Spears. And that would... In other words... That could delve into pornography. See, maybe there's a difference if you go on... Who's the woman who won the Academy Award? Helen Mirren. Yes. The queen. I don't believe that's in the record. No, no. I'm just trying to make a point. In other words, we're trying to clarify something. If you Google her name, you'll get, I guess, a bunch of things you can find out about. Correct. But there's another way you can do and say an image. Yes, Your Honor. And you'll get pictures of it. Yes. If you look at the Google page as it's set up to you, underneath the Google, there are underlined... I guess they may be called hyperlinks, and it says images is one of those. But isn't that... Wouldn't that make a difference, whether you were looking for images... I mean, if you look for an image of someone who is a recognized actor or actress, okay? Would that get you into using the computer for pornographic purposes? In other words, say... Well, I mean, say, in other words, to use the example that was raised of Britney Spears. You say, I want an image of Britney Spears. Now, that wouldn't necessarily... I mean, I wonder if... Now, whereas if you go and there's some pornographic actress, wouldn't that be different, though? And, Your Honor, there is evidence of searching for pornographic actresses. In the Douglas Backers, which laid out the joint appendix of 901 through 903, when discussing the nature and seriousness of the conduct, it notes that the... Mr. Marvin was... ...regularly spent on non-work-related Internet searches, most of which were for images of female celebrities, including Paris Hilton, Marilyn Chambers, Linda Lovelace, and numerous others. And it has been stated in the record that Linda Lovelace and Marilyn Chambers are... So it would be all right to go to the Paris Hilton site, but not the other two, if you weren't spending excessive time. True, but if you were looking for certain images of Paris Hilton that would be deemed pornographic, then I think you would certainly be, again, clearly within specification number two. Just briefly, as I see that my time is running out, this penalty clearly falls within the tolerable bounds of reasonableness, and there has been substantial evidence in the record, both documentary and testimonial, that supports the Board's finding, and we respectfully ask that the Court affirm it. Thank you. Thank you. May I address the issue that you raised, Judge, if you don't mind? I'll tell you how Judge Booker handled it. Judge Booker found, and it's in his decision, he wrote a very eloquent 70-page decision, he found that the evidence, Budai's testimony, that's the agency man, the testimony of Mr. Martin, the petitioner, and all the other evidence as to the second element of spec one, proves, and he wrote this, proves that Mr. Martin's position is tenable. He may not have used the exact words, but he said, on and off in a second, it showed no excess viewing, and Mr. Martin testified there were all pop-ups. Then the judge went on to state that this still is not proper government use of the computer, which I agree with. We may have had an appealable issue on that aspect, even to the Board. We decided not to, for whatever reasons. It's unimportant. But his finding of fact comported with the evidence presented. This was never discussed. To what extent was use of the computer with respect to allegedly non-pornographic sites a factor? Yes. When you look at the first specification, it's about four days in April, maybe five. There's one time for 53 minutes, one time for over an hour, another time for minutes, another time for over an hour. He goes down to April 27th, I think, for another 50 minutes or an hour. And then May 2nd, this is 04, and then May 2nd, and it ends after a couple of minutes in May 2nd. That was spec one, charge one. Spec two, unlike what counsel said, spec two had nothing to do with spec one, although it was use of the computer. And the evidence also indicated that Mr. Martin got into work at 6 o'clock in the morning. So he ran his own schedule, if you will. What I'm saying is, was all of spec one non-pornographic? Time. It was non-pornographic. There was no allegation. The word pornography was not used in spec one. It was just time. It was time. And it was just published, right? It was celebrities, as you correctly said. It was uic.com. It was mobile, mahegansun.com. So what he was doing, he was setting up his vacations. And he bought a view. He was buying things. And he was using the computer, to that extent. There's no question. What troubles me is, I think, and I don't want to see the court, at least in this case, and I think this case is important, because what other vehicle do your honors recall where you open a record and the signing official says, God, I didn't realize he was complaining about it. I didn't know that. What other vehicle does he say, what put me over the top was Duval Thomas' testimony that he viewed it. That's what he said. And he said, otherwise it would have been ten days. That's what he said. Clear as a bell. So when you have the board substituting its opinion, its discretion, as you raised the issue before, for solid, evidential, substantial evidence, I think it violates the court's protocols in Jackson against the VA. And I thank you very much. Thank you.